# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**v.**                               **Case Nos.:  3:08cr61/LAC/CJK**
                                                **3:11cv254/LAC/CJK**

**ADRIAN CATHWON**
_____/

## ORDER, REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law (doc. 435), the Government's response (doc. 451) and Defendant's reply (doc. 473). The Government also has filed a motion to strike Defendant's amended assertion to his § 2255 petition (doc. 474), to which Defendant responded (doc. 475). This case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules Governing Section 2255 Cases 8(a) and (b).

# PROCEDURAL BACKGROUND[1]

Defendant and nine others were charged in a single count indictment with conspiracy to distribute and possess with intent to distribute five hundred (500) grams or more of cocaine and five (5) grams or more of cocaine base in violation of 21 U.S.C. § 841(b)(1)(B)(ii) and (iii) (doc. 101). The Government filed a Notice of Enhancement Information noting Defendant had three prior controlled substance convictions (doc. 119). The same convictions were cited in the Government's "Fed. R. Evid. 404(B) Notice" as uncharged misconduct that could be introduced at trial to prove intent (doc. 148). Defendant filed a notice of partial alibi noting that Defendant had been incarcerated during much of the time frame of the alleged conspiracy (doc. 194). After seven co-defendants entered guilty pleas, the grand jury returned a superseding indictment against Defendant Cawthon, Roderick Slack and Tremaine Hamilton. The time frame of the conspiracy remained unchanged, but the quantity of drugs alleged to have been involved was increased from five hundred (500) grams to five (5) kilograms of cocaine, and from five (5) grams to fifty (50) grams or more of cocaine base (doc. 196). There were no weapons charges, although the evidence at trial reflected that weapons were involved in the conspiracy. Defendant was convicted as charged in the indictment after a two-day jury trial (doc. 224).

The Presentence Investigation Report ("PSR") was disclosed to the defense on November 10, 2008 (doc. 269). Defendant was held accountable for 775,374

---

[1]Details surrounding the offense conduct are set forth in the PSR and the Eleventh Circuit's opinion on direct appeal (doc. 390) as well as the trial transcript and other court documents and thus will be set forth herein only as necessary for resolution of Defendant's claims.

kilograms of marijuana,[2] for a base offense level of 38 (PSR ¶ 57). He received a two-level adjustment because a dangerous weapon was used in the offense, and another two-level adjustment for his leadership role (PSR ¶¶ 58, 60). His total offense level was 42.[3] Defendant had thirty (30) criminal history points and, therefore, a criminal history category of VI. The applicable guidelines range was 360 months to life (PSR ¶ 128), and 21 U.S.C. § 841(b)(1)(A) provided for a mandatory term of life imprisonment due to Defendant's two prior felony drug convictions (PSR ¶ 127).

Defendant objected generally to the offense conduct as described in the PSR, denying his involvement in the conspiracy and objecting to the drug weight attributed to him as well as the role assigned to him by the Government (PSR ¶ 150). He said he believed that the witnesses were untruthful in their testimony in hopes of receiving lenient treatment in their own cases, and claimed that he could not have done what the Government alleged he did and what the jury found because he was incarcerated during the majority of the conspiracy period (PSR ¶ 150).

At sentencing, the court overruled Defendant's objection based on the jury's verdict and the evidence it had heard at trial (doc. 335 at 2). Defendant acknowledged that he had been convicted of the three prior drugs offenses listed in the PSR (*id.* at 2–3). The court sentenced Defendant to a term of life imprisonment, as required by statute (docs. 287, 288, 335 at 4).

---

[2] The Drug Equivalency Table located in application note 8 to section § 2D1.1 of the Guidelines provides a means for combining different controlled substances to obtain a single offense level by using a "marijuana equivalent." Thus, this aggregate amount of marijuana reflects Defendant's accountability for 47.87 kilograms of cocaine and 38.29 kilograms of cocaine base (PSR ¶¶ 49–50).

[3] Defendant was a career offender, but he scored out higher using the calculations under Chapters Two and Three, and hence those calculations controlled (PSR ¶ 65).

On appeal, Defendant challenged the sufficiency of the evidence supporting his conviction (doc. 390). Specifically, he contended that there was no direct evidence linking him to the conspiracy because the Government never made a controlled buy directly from him and never found any drugs in his possession (*id*. at 17). He also noted that he had been in custody during approximately two-thirds of the time frame specified in the indictment, and that nearly all of the evidence against him came from convicted felons testifying in hopes of reducing their sentencing exposure, none of whom offered exact dates about his involvement (*id*.). The Eleventh Circuit affirmed, noting that the "uncorroborated testimony of a co-conspirator or accomplice is sufficient to prove guilt beyond a reasonable doubt" (*id*. at 17–20). The Supreme Court denied certiorari on June 14, 2010 (doc. 399). Defendant's initial motion pursuant to § 2255 was timely filed on May 19, 2011 (doc. 430 at 9). His amended motion, in which he raised eleven grounds for relief, is currently pending before the court. The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

### General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that

could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider those issues raised in a section 2255 motion which have been resolved on direct appeal. <u>Rozier v. United States</u>, 701 F.3d 681, 684 (11th Cir. 2012); <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36 F.3d 1052, 1056 (11th Cir. 1994); <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. <u>Nyhuis</u>, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. <u>Sanders v. United States</u>, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal, such as many of those raised by Defendant in this case, are generally not actionable in a section 2255 motion and will be considered procedurally barred. <u>Lynn</u>, 365 F.3d at 1234–35; <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998); <u>McKay v. United States</u>, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its

merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To show a violation of his constitutional right to counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland, 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying

Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013) (citations omitted).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Secretary for Dept. of Corrections, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 585 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome

determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369–70 (1993); <u>Allen v. Secretary, Florida Dep't of Corrections</u>, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart</u>, 506 U.S. at 369 (quoting <u>Strickland</u>, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. <u>Glover v. United States</u>, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. <u>Smith v. White</u>, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the <u>Strickland</u> test. *See* <u>Boyd v. Comm'r, Ala. Dep't of Corrections</u>, 697 F.3d 1320, 1333–34 (11th Cir. 2012); <u>Garcia v. United States</u>, 456 F. App'x 804, 807 (11th Cir. 2012) (citing <u>Yeck v. Goodwin</u>, 985 F.2d 538, 542 (11th Cir. 1993)); <u>Wilson v. United States</u>, 962 F.2d 996, 998 (11th Cir. 1992); <u>Stano v. Dugger</u>, 901 F.2d 898, 899 (11th Cir. 1990) (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between." <u>Chandler</u>, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" <u>Dingle</u>, 480 F.3d at 1099 (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See* <u>Chandler v. McDonough</u>, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing <u>Drew v. Dept. of Corrections</u>, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); <u>Hill v. Moore,</u> 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); <u>Ferguson v. United States</u>, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by

specifics, or contentions that are wholly unsupported by the record. <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1237 (11th Cir. 2004); <u>Tejada</u>, 941 F.2d at 1559; <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. <u>Lynn</u>, 365 F.3d at 1239.

## Grounds One through Three: Variance/Multiple Conspiracies and Ineffective Assistance of Counsel

Defendant's first contention is that the evidence presented at trial exceeded the scope of the indictment. He maintains that there was a variance in the indictment because the Government introduced evidence of multiple conspiracies in order to prove the single conspiracy with which he was charged. Defendant also asserts that he was prejudiced by the spillover effect of the evidence of what he characterizes as separate conspiracies carried on by his co-defendants during his incarceration. Finally, he maintains that the Government failed to prove that any of the cooperating witnesses were acting under his direction, in furtherance of a common goal, or that there was any interdependence among them. *Citing* <u>United States v. Chandler</u>, 388 F.3d 796, 811 (11th Cir. 2004). The last portion of Defendant's argument is arguably encompassed in the sufficiency of the evidence claim he raised on appeal. In any event, the entirety of this claim could have been raised on appeal, and Defendant's failure to have done so results in a procedural bar. <u>Lynn</u>; <u>McKay</u>; <u>Bousley</u>; *supra*. Defendant has not shown cause or prejudice from his failure to raise these arguments previously because, as will be discussed below, they are substantively without merit.

The law in this circuit establishes that reversible error does not occur where a single conspiracy is charged in the indictment, although multiple conspiracies are

revealed at trial, "unless the variance is (1) material and (2) substantially prejudiced the defendant." United States v. Coachman, Case No.: 12-14751, 2013 WL 2450743, at *4 (11th Cir. Jun. 4, 2013) (quoting United States v. Edouard, 485 F.3d 1324, 1347 (11th Cir. 2007); *see also* United States v. Alred, 144 F.3d 1405, 1414 (11th Cir 1998). "The arguable existence of multiple conspiracies does *not* constitute a *material* variance from the indictment if, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found that a single conspiracy existed beyond a reasonable doubt." Coachman, 2013 WL 2450743 at *4 (quoting Edouard, 485 F. 3d at 1347) (emphasis in original quotation). The question of whether the evidence establishes a single conspiracy or multiple conspiracies is the province of the jury. United States v. Lopez, 403 F. App'x 362, 371 (11th Cir. 2010) (citing United States v. Adams, 1 F.3d 1566, 1584 (11th Cir. 1993)); Alred, 144 F.3d at 1414. To determine whether the jury could have found a single conspiracy, the court considers: "(1) whether a common goal existed; (2) the nature of the underlying scheme; and (3) the overlap of participants." Coachman, 2013 WL 2450743 at *4 (quoting Edouard, 485 F.3d at 1347). The fact that separate transactions occurred does not necessarily prove the existence of separate conspiracies "so long as the conspirators act *in concert* to further a common goal." *Id.* (emphasis in original quotation). The courts interpret the common goal element "as broadly as possible" to mean "similar" or "substantially the same" rather than identical or "shared." *Id*. (citing United States v. Richardson, 532 F.3d 1279, 1285 (11th Cir. 2008)). Furthermore, the mere fact that a single conspiracy may be divisible into separate agreements does not direct a finding that more than one conspiracy exists if the different subgroups are acting in furtherance of a single plan. *See* United States v.

<u>Baker</u>, 432 F.3d 1189, 1233 (11th Cir. 2005) (quoting <u>United States v. Calderon</u>, 127 F.3d 1314, 1329 (11th Cir. 1997)). A given defendant need not participate in, or even be aware of, all of the activities or participants forming the larger conspiracy, so long as he is aware of the general scope and purpose of the conspiratorial agreement. <u>United States v. Garcia</u>, 405 F.3d 1260, 1269 (11th Cir. 2005); *see also* <u>United States v. Decubas</u>, 506 F. App's 986, 989–990 (11th Cir. 2013); <u>Baker</u>, 432 F.3d at 1232 (citing <u>United States v. Toler</u>, 144 F.3d 1423, 1427–28 (11th Cir. 1998)); <u>Alred</u>, 144 F.3d at 1415. Finally, the court need not consider the question of prejudice with respect to the alleged variance unless there was no evidentiary foundation for the jury's finding of a single conspiracy. <u>Richardson</u>, 532 F.3d at 1284.

The evidence at trial established that the various co-conspirators purchased drugs from sources of supply in and out of state and brought them back to Santa Rosa County for local distribution. Some of the purchases were made jointly. Evidence of drug dealing activities during Defendant's incarceration was not overwhelming, and was arguably used merely to show the continuity of the enterprise. For example, Christopher Watson testified that the conspiracy would continue while Defendant was in prison and when Defendant was released he would "get back in the game" (doc. 342 at 19). Deshric Slack gave similar testimony (doc. 342 at 151). The evidence at trial clearly showed that defendants Cawthon, Hamilton and Roderick Slack were acting in furtherance of a single, overarching plan, and Defendant's argument that he could not have been convicted of having participated in a single conspiracy based on the evidence at trial is unpersuasive. <u>Baker</u>, 432 F.3d at 1233 (quoting <u>Calderon</u>, 127 F.3d at 1329).

Defendant is correct that the jury heard testimony about transactions and activities that occurred beyond the scope of the charged conspiracy. However, testimony about illegal activities outside the time frame of the conspiracy is permissible under Eleventh Circuit precedent and Federal Rule of Evidence 403. *See* United States v. Lopez, 649 F.3d 1222, 1248 (11th Cir. 2011) (allowing testimony outside the time frame of the conspiracy to show context for co-conspirators' relationship); United States v. Miller, 431 F. App'x 847 (11th Cir. 2011) (allowing evidence to "complete the story of the crime"); United States v. Nelson, 321 F. App'x 904, 906 (11th Cir. 2009) (allowing evidence to prove beginning and continuing stages of conspiracy). Additionally, Defendant's assertion that the testimony was "unexpected" and he was unprepared to defend himself is disingenuous; he was placed on notice before trial that this evidence would be presented (*see* doc. 214). Based on a review of the entire record, the court finds that there was no improper variance, and the evidence supported the jury's finding.

Because Defendant's claim is substantively without merit, his claim that both trial and appellate counsel were constitutionally ineffective for their failure to raise or preserve them must also fail. Counsel will not be found to be constitutionally ineffective for failing to preserve or argue a meritless claim. Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008); *see also* Sneed v. Florida Dep't of Corrections, 496 F. App'x 20 (11th Cir. 2012) (failure to preserve meritless Batson claim not ineffective assistance of counsel); Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues

clearly lacking in merit); <u>Chandler v. Moore</u>, 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence). The same is true of appellate counsel. *See* <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984) (citations omitted); *see also* <u>Lambrix v. Singletary</u>, 72 F.3d 1500, 1507 (11th Cir. 1996); <u>United States v. Phillips</u>, 210 F.3d 345, 348 (5th Cir. 2000). There was no "variance," and as such trial counsel was not constitutionally ineffective for his failure to challenge same. Similarly, he was not constitutionally ineffective for his failure to request a "multiple conspiracy" instruction, as such an instruction was not supported by the facts of this case. *See* <u>Brown v. United States</u>, No.: 4:09cr63, 2013 WL 1868363, at \*5–6 (E.D. Va. May 2, 2013). And, appellate counsel's performance was not deficient due to his failure to argue these issues on appeal.

## Ground Four: Prosecutorial Misconduct–Improper Use of Leading Questions

In Defendant's fourth ground for relief, he contends that the Government used leading questions during direct examination of cooperating witnesses, and that counsel was ineffective for his failure to object. The court has reviewed the testimony of which Defendant complains.[4] Not all of the pages referenced by Defendant contain leading questions. There are, however, many questions that could be described as such and which could have been phrased slightly differently to avoid

---

[4]Testimony of: Chris Watson (doc. 342 at 13–19; 40–41); Tracy Freeman (doc. 342 at 45–48, 50–51); Antonio Henry (doc. 343 at 70, 74–75, 86–87); Shannon Roulhac (doc. 343 at 88–89, 91, 93); Byron Washington (doc. 343 at 105–106, 108, 109); Valentine Vasser (doc. 343 at 122–123, 125, 145); Deshric Slack (doc. 343 at 147–149, 151–153); Claude Cosey (doc. 343 at 167–168, 214–215, 217, 220, 260–261); Steven Pinkney (doc. 343 at 182, 184–185, 196–197); Blake Weekly (doc. 343 at 213–214); Katrisa Thomas (doc. 343 at 224–228; 239–240); Avaram Williams (doc. 343 at 241–242, 252–253). Defendant also referenced the testimony of Herman Fails, although the page citations listed were actually for the testimony of Mr. Pinkney. Therefore, the court has reviewed Mr. Fails' testimony in its entirety as it relates to this matter. Although the trial transcript for the second day of trial is identified throughout this recommendation by document number (doc. 343), the page number references associated therewith refer to the actual page numbers of this trial transcript, rather than those assigned by the electronic docketing system.

being so labeled. Nonetheless, after reviewing the referenced pages in the context of the record as a whole, the court finds that there was no impropriety in the Government's questioning. In accordance with the Rules of Evidence, leading questions may be used to "develop the witness's testimony." Fed. R. Evid. 611(c); *accord* United States v. Rolle, 432 F. App'x 853, 856 (11th Cir. 2011); United States v. Diaz, 377 F.App'x 883, 890 (11th Cir. 2010); United States v. Hewes, 729 F.2d 1302, 1325 (11th Cir. 1984); Morgan v. Bill Van Co., Inc., Case No. 11-0535-WS-B, 2013 WL 4657554, at *1 (S.D. Ala. Aug. 30, 2013) ("Authority is legion for the proposition that use of leading questions on direct examination may be permitted in the trial court's discretion"). The Government's use of leading questions in this case was primarily aimed at eliciting testimony about the various witnesses' plea and cooperation agreements and their criminal histories--to wit, non-substantive matters unrelated to the alleged offense conduct.[5] Because there was no impropriety in the Government's questioning, counsel was not ineffective for his failure to object, and Defendant is not entitled to relief. *See* Freeman; Brownlee; Sneed; *supra*.

## Ground Five: Prosecutorial Misconduct--Government Encouraged Untruthful Testimony

Defendant claims that the Government encouraged the cooperating witnesses to lie to inflate the drug amounts and types of controlled substances attributable to the defendants in this case in order to secure longer sentences. Defendant's claim of prosecutorial misconduct without an incorporated ineffective assistance of counsel claim could have been raised on direct appeal, and as such is procedurally barred.

---

[5]The situation presented in this case is clearly distinguishable from Walker v. Davis, 840 F.2d 834 (11th Cir. 1988), cited by Defendant, as in Walker, the prosecuting attorney actually took the stand and testified as a witness.

Lynn; McKay; *supra*.  Even if this claim is not procedurally barred, Defendant has failed to show his entitlement to relief.

Defendant primarily assails the testimony of Byron Washington (doc. 343 at 104–122).  Defendant's assertion that Washington lied is based on an unsigned, undated portion of a letter bearing neither a signature nor a salutation which was purportedly written by Washington and sent to Antonio Henry, another cooperating witness (doc. 435 at 31).  Even if the court accepts Defendant's representation about the origin of the letter, after reviewing its contents, the court finds that it does not rise to the level of either "recanted" testimony or a suggestion that the Government suborned perjury as portrayed by Defendant.  Furthermore, the contents of the letter are consistent with the information Washington provided in a December 2006 debriefing with law enforcement, as well as his testimony at trial (*see* doc. 451-2 at 2–6; doc. 343 at 106–111).  Defendant has not shown a factual basis for his assertion of governmental misconduct and thus no entitlement to relief.

## Ground Six: Due Process Violation--DEA Agent's Contact with Juror During Trial

Defendant contends that his due process rights were violated by DEA Agent Claude Cosey's  contact with the lone female African-American juror during a court recess during which they discussed Defendant's guilt.  The Government argues that the issue is both procedurally barred and without the evidentiary support necessary to establish that such extrinsic contact occurred.  *See* United States v. Khanani, 502 F.3d 1281, 1291 (11th Cir. 2007) (initial burden is on the defendant to show that extrinsic contact occurred).

Along with his reply, Defendant submits what purport to be sworn, unnotarized statements from Dominique Edwards and Chalondra Cawthon, who attended his trial (doc. 473 at 29–30). Ms. Edwards states that during Defendant's trial, as she was approaching the sidewalk from the parking area for the courthouse, she overheard Agent Cosey make a comment to the only African-American juror involved in the trial. Cosey allegedly stated: "Cawthon is guilty." The juror responded to Cosey "I believe he's guilty and I don't like his demeanor in the courtroom" (*id.* at 29). Ms. Edwards avers that she insisted that Ms. Cawthon inform Cawthon's brother (the Defendant) what Edwards heard so he could tell his attorney (*id.*). The affidavit of Ms. Cawthon, while varying in minor details about when the incident transpired,[6] also reflects that she heard Agent Cosey tell the only African-American juror that Cawthon was "guilty beyond a doubt" and that the juror responded as reported by Ms. Edwards (*id.* at 30). Ms. Cawthon avers that she reported this conversation promptly to her brother (*id.*). Accepting as true Ms. Cawthon's assertion that she advised her brother about what she and Ms. Edwards overheard, this issue could and should have been brought to the attention of the district court at the time. Defendant does not claim that he told counsel about what Ms. Edwards and Ms. Cawthon had allegedly witnessed, and as such counsel cannot be constitutionally ineffective for his failure to pursue an issue that he knew nothing about. Defendant neither explains why he raised the issue for the first time in his § 2255 motion nor attempts to excuse his failure to bring it to the attention of the trial court. As such, he is not entitled to relief.

---

[6] Ms. Cawthon says both that the incident occurred on the first day of trial "after court was in recess" and also that it was "early in the morning, walking from the parking lot" (doc. 473 at 30).

## Ground Seven: Failure to Request Alibi Instruction

Defendant asserts that counsel was constitutionally ineffective because he failed to request an alibi instruction due to Defendant's incarceration during much of the charged conspiracy.  In a statement that seems to admit his involvement in the conspiracy, Defendant states that he "was involuntarily withdrawn from the conspiracy because of his incarceration" (doc. 435 at 21) and maintains that counsel should have requested that the jury be instructed that he could not be held responsible for controlled substances that were possessed during his various periods of incarceration.

The parties stipulated to the introduction of an exhibit that showed the time periods in the conspiracy during which Defendant was incarcerated (doc. 343 at 263).  Thus, the jurors were undoubtedly aware of the precise periods during which Defendant was incarcerated.  Furthermore, even if the alibi instruction had been given, the outcome of the proceeding would not have changed.  There was sufficient evidence to support the jury's finding that Defendant had participated in the conspiracy, and sufficient co-conspirator testimony regarding the time that he was not incarcerated for it to find that he was accountable for more than five kilograms of cocaine.  *See* Testimony of Christopher Demay Watson (doc. 342 at 16–21), Antonio Henry (doc. 343 at 72–74), Shannon Roulhac (doc. 343 at 91–92), Byron Washington (doc. 343 at 106–110), Valentine Vasser (doc. 343 at 124–126), Deshric Slack (doc. 343 at 150–152); Steven Pinkney (doc. 343 at 183–185); and  Katrisa Thomas (doc. 343 at 226–228).  Furthermore, two witnesses testified that upon release Defendant would simply "hop back in the game" (doc. 343 at 151, 228).  Defendant has not

established either deficient performance or prejudice due to counsel's failure to request the alibi instruction.

## Ground Eight: Failure to Object to Lack of Proof regarding Identity of Drug

Ground eight contains two parts. Defendant's assertion that counsel was remiss in not objecting to the Government's failure to prove at trial that the conspiracy involved actual cocaine base fails because he cannot show prejudice. The verdict form reflects that the jury found beyond a reasonable doubt that the conspiracy involved both five (5) kilograms or more of cocaine as well as fifty (50) grams or more of cocaine base (doc. 224).[7] Because an offense involving five (5) kilograms or more of cocaine falls under the highest threshold level of penalties in § 841(b), even if the court had disregarded the jury's finding that the conspiracy also involved fifty (50) grams of cocaine base, Defendant would have been subject to the same sentencing parameters. *See* § 21 U.S.C. § 841(b)(1)(A)(ii).

Defendant also claims that trial counsel was constitutionally ineffective because he failed to object to the testimony of DEA Special Agent Claude Cosey concerning the potency of "drop" versus "crack" cocaine. Defendant maintains that counsel should have objected to this testimony because it was expert testimony presented by a layperson in contravention to Rule 701 of the Federal Rules of Evidence. Cosey testified that he had approximately twenty years of experience as a narcotics officer and that he had been involved in several hundred narcotics

---

[7]Defendant's assertion that the jury should have been required to find the precise amount of cocaine and cocaine base attributable to him under Alleyne v. United States, 133 S.Ct. 2151 (2013) (*see* doc. 495) is misguided. The verdict form tracked the quantity ranges of controlled substances to which different statutory penalties apply. A finding that the conspiracy involved either five (5) kilograms of cocaine or fifty (50) or more grams of cocaine base was sufficient at the time of Defendant's trial to support the imposition of penalties in accordance with 21 U.S.C. § 841(b)(1)(A), rather than § 841(b)(1)(B) or (C). No greater specificity was required with respect to the jury's verdict on drug quantity either before or after Alleyne.

investigations during that time (doc. 342 at 4–5).  As conceded by Defendant, law enforcement officers "can testify as lay witnesses based upon their particularized knowledge gained from years of experience within the field."  United States v. Cannon, 149 F. App'x 937, 941 (11th Cir. 2005) (quoting Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1223 (11th Cir. 2003)).  Although there is contrary authority suggesting such testimony may be presented as expert testimony, see United States v. Garcia, 447 F.3d. 1327, 1334–35 (11th Cir. 2006) (citing Fed. R. Evid. 702), that is not the issue presented here.  Defendant argues that Cosey was not trained in the chemical or molecular makeup of cocaine hydrochloride and its salts, isomers, bases or other forms, and that some of Cosey's conclusions were simply wrong (doc. 435 at 25).  Specifically, he states that Cosey's statement that "drop" was a more potent form of cocaine base than was "crack" was incorrect because there is no difference in the two substances (id. at 25–26).  Even if counsel had objected to this testimony as an improper "expert" opinion, the same information was placed before the jury by the lay opinion testimony given by Deshric Slack and Katrisa Thomas (doc. 343 at 151–152; 227–228).  Furthermore because, as noted above, the jury's finding based on powder cocaine alone was sufficient to support the sentence imposed, he cannot show prejudice.[8]  He is not entitled to relief on this ground.

---

[8]Defendant's supplemental argument with respect to this claim, that DePierre v. United States, 131 S.Ct. 2225 (2011) affords him relief (doc. 479), also is mistaken.  In DePierre, the Supreme Court held that "cocaine base," as the term is used in 21 U.S.C. § 841(b)(1), encompasses not just crack cocaine, but cocaine in its chemically basic form.  131 S.Ct. at 2230–2237.  This holding has no impact on the facts of Defendant's case.  The jury's verdict did not specify the form of "cocaine base" involved in the conspiracy.

**Ground Nine: Failure to Object to Introduction of Hearsay**

At trial, the Government introduced into evidence business records from the Florida Department of Revenue which purported to show that during the time frame of the conspiracy none of the three defendants had earned any legitimate income in the State of Florida. The suggested inference was that the large quantity of cash they had in their possession upon arrest was the proceeds of unlawful activity (doc. 343 at 215–221). At a bench conference before the evidence was presented, Mr. Greenberg, counsel for co-defendant Hamilton, argued that the documents were not relevant. When the court asked "[w]hat's the objection, to the authenticity of...," Mr. Greenberg broke in and again indicated that the documents were not relevant and that there was no foundation in this case. The court asked "Your objection is not to the authenticity of the piece of paper then?" to which Greenberg responded "No, your Honor." The court overruled the objection (doc. 343 at 216). Defendant now contends that counsel failed to take the court's "hint" that an authenticity objection would have been sustained, and that counsel was constitutionally ineffective for his failure to object to the introduction of this hearsay evidence which, according to Defendant, was both unreliable and irrelevant.

The exhibits in question were introduced into evidence accompanied by a "Certificate of Authenticity of Domestic Business Records Pursuant to Federal Rule of Evidence 902(11)" (*see* doc. 451, exh. E). They thus were admissible. *See, e.g.,* United States v. Yeley-Davis, 632 F.3d 673 at 677–681 (10th Cir. 2011); United States v. Adefehinti, 510 F.3d 319, 324–328 (D.C. Cir. 2008). To the extent Defendant seeks to challenge their relevance, the district court already overruled this objection (doc. 343 at 216). Furthermore, both Defendant's attorney, Mr. Sutherland,

and Mr. Greenberg thoroughly explored the relevance and limitation of the probative value of the records in questioning on cross examination (*id*. at 218–220). Counsel was not constitutionally ineffective for failing to make a meritless objection, Freeman; Sneed; supra., and Defendant is not entitled to relief.

## Ground Ten: Appellate Counsel's Failure to Request Certain Transcripts

Defendant contends that appellate counsel was constitutionally ineffective because he failed to order transcripts of voir dire, opening statements or closing arguments, and as such did not have a complete transcript to review in search of errors at the trial court level. Defendant now seeks the opportunity to review these portions of the trial record in order to demonstrate the prejudice he suffered as a result of counsel's failure to order same. Thus, this is not a request for relief, but rather a request to be able to search for possible grounds for relief not cognizable as part of a § 2255 motion. Furthermore, a prisoner is not entitled to search the trial transcript or other records for possible error at the government's expense. *See* United States v. Warmus, 151 Fed.Appx. 783, 787 (11th Cir. 2005) (citing Skinner v. United States, 434 F.2d 1036 (5th Cir. 1970); United States v. Herrera, 474 F2d 1049 (5th Cir. 1973)).

## Ground Eleven: Cumulative Error

Defendant asserts that all of the alleged errors set forth herein, even if harmless by themselves, resulted in cumulative error which violated his due process rights. It is true that the cumulative effect of several errors can so prejudice a defendant's right to a fair trial that a new trial might be necessary even if the errors considered individually are non-reversible. *See, e.g.*, U.S. v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005); United State v. Preciado-Cordobas, 981 F.2d 1206, 1215 n.8 (11th

Cir. 1993)(citing <u>United States v. Pearson</u>, 746 F.2d 787, 796 (11th Cir. 1984));
<u>United States v. Adams</u>, 74 F.3d 1093,1099 (11th Cir. 1996); <u>United States v. Thomas</u>, 62 F.3d 1332, 1343 (11th Cir. 1995). However, "[a] defendant is entitled to a fair trial not a perfect one." <u>Ramirez</u>, 426 F.3d at 1353 (*quoting* <u>United States v. Adams</u>, 74 F.3d 1093, 1099– 1100 (11th Cir. 1996) (*citing* <u>Lutwak v. United States</u>, 344 U.S. 604, 619, 73 S. Ct. 481, 490, 97 L. Ed. 593 (1953))). The cumulative error doctrine is inapplicable where the district court commits no individual errors. <u>United States v. Waldon</u>, 363 F.3d 1103, 1110 (11th Cir. 2004); <u>United States v. Barshov</u>, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); <u>Mullen v. Blackburn</u>, 808 F.2d 1143, 1147 (5th Cir. 1987) (noting that increasing the number of non-meritorious claims raised will not support a finding of cumulative error because "Twenty times zero equals zero."). The Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims.[9] Thus, having found no error, there can be no cumulative error, and Defendant is not entitled to relief.

## Supplemental Ground: Failure to Disclose Exculpatory Evidence to Grand Jury

In his reply memorandum, Defendant alleges for the first time that the Government failed to disclose exculpatory evidence that would have negated his role in the commencement of a conspiracy that began in January of 2004. Specifically, he claims that the Government mislead the grand jury into believing that he was a leader in the commencement of the conspiracy from its inception although in reality

---

[9]The Eleventh Circuit has noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel." <u>Forrest v. Fla. Dep't of Corr.</u>, 342 F. App'x 560, 565 (11th Cir. 2009). The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* (quoting <u>United States v. Cronic</u>, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

he was incarcerated from August of 2003 through January of 2005 (doc. 473 at 17–22). The Government has moved to strike this assertion, contending that it is both untimely as well as factually and legally without merit (doc. 474). In response, Defendant concedes that the claim is procedurally defaulted, but takes the position that it would be a miscarriage of justice not to review the claim on its merits (doc. 475 at 2).

The basis for Defendant's assertions about what transpired before the grand jury is unclear. It also appears that he misapprehends what the Government has to prove in order to secure an indictment. The Government was not required to prove Defendant's guilt beyond a reasonable doubt, nor was it required to prove his role in the offense, nor was it required to prove the exact dates of his participation.[10] Most significantly, the Government is not even required to present exculpatory evidence to the grand jury, as Defendant now claims. *See* United States v. Williams, 504 U.S. 36, 52–54 (1992). His supplemental claim is both time-barred and without merit, and in light of this finding, the Government's motion to strike this claim will be denied as moot.

## Conclusion

In sum, none of the claims Defendant raises in either his amended motion or his supplement thereto entitle him to § 2255 relief. They are all procedurally barred, without merit, or both. Thus, Defendant's § 2255 motion should be denied.

---

[10]Even at trial, the Government need not prove exactly what the indictment alleges. "It is sufficient for the government to prove a subset of the allegations in the indictment, as long as the allegations that are proved support a conviction for the charged offense." United States v. Richardson, 532 F.3d 1279, 1288–89 (11th Cir. 2008) (citing United States v. Ward, 486 F.3d 1212, 1227 (11th Cir.2007); *see also* United States v. Duff, 76 F.3d 122, 126 (7th Cir.1996) (citing United States v. Miller, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985)) ("A prosecutor may elect to proceed on a subset of the allegations in the indictment, proving a conspiracy smaller than the one alleged.")).

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The Government's "Motion to Strike Defendant's Amended Assertion to his § 28 U.S.C. § 2255 Petition" (doc. 474) is **DENIED**.

And based on the foregoing, it is respectfully **RECOMMENDED**:

1. Defendant's amended motion to vacate, set aside, or correct sentence (doc. 435) be **DENIED**.

2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 10th day of September, 2013.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).